UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION



UNITED STATES OF AMERICA               Case No. 97-581-Cr-Lennard

VS.

FELIPE ARNAIZ
_____

### Sentencing Memorandum

On July 14, 1994, Mr. Arnaiz signed a proffer agreement with the understanding that "no statement made by Mr. Arnaiz during the debriefings would be used against him directly in **ANY** criminal procedure brought by this office". Also, during the first interview by S/A Whitting, Mr. Arnaiz was reassured "that nothing said in the interview would be used against him the a court of law or **OTHER** judicial procedure. (Exhibit AI)

Mr. Arnaiz then proceeded to give over forty debriefings to S/A Whitting, participated in a three week sting operation, through his employees paid recruiters for three months while Mr. Arnaiz was incarcerated and then at the time of the sting, the recruiters were paid personally by Mr. Arnaiz and his employees. Mr. Arnaiz was debriefed numerous times by AUSA Angueira and agent Gramlich; was debriefed in another case by the FBI, testified with his wife at Grnad Jury proceedings, testified with his wife at Mr. Fernandez' trial, was interviewed by IRS agents, all with the



understanding that he was immunized by his proffer agreement and "Kastigar". Kastigar states "it (immunity against self-incrimination), can be asserted in **ANY** criminal proceeding, civil or criminal, administrative or judicial investigatory and abjudicatory and it protects against any disclosure that the witness **REASONABLY** believes could be used in a criminal prosecution or could lead to other evidence that might be so used. This Court has been zealous to safeguard the values that underlie this privilege" Kastigar at 217, 406 U.S. 441 L Ed 92 S. Ct. 1653. Thereafter, AUSA Angueira proceeded to use Mr. Arnaiz' immunized information to obtain an indictment and included it in the PSI.

### "Where is the Money"

For the aforementioned information, the AUSA filed a 5K1 Motion on Mr. Arnaiz' behalf for his substantial assistance to the U.S. Government.
Included in this cooperation were detailed interrogations of the various clinics checking accounts. This matter was investigated exhaustively and thoroughly. Mr. Arnaiz was called on many times to explain the disposition of certain checks to the Government's satisfaction.

After the Court showed concern for the disposition of the funds, Mr. Oliva wrote Mr. Angueira to resolve this matter and made Mr. Arnaiz available at the AUSA's disposal to answer any questions regarding the Court's concern and, thereafter, report to the Court. Mr. Oliva took this matter very seriously and tried to resolve this matter with the AUSA. The AUSA did not ask for a meeting with Mr. Arnaiz and later filed a 5K1 Motion on Mr. Arnaiz' behalf. The AUSA had the duty to inform the Court (see Plea Agreement Page 5,Pa), regarding Mr. Arnaiz' truthfulness prior to Mr. Fernandez' trial and prior to the submission of the 5K1 Motion

The Government filed the 5K1 almost a year after the Court asked for an accounting of the funds, giving the Government ample time to investigate any discrepancies in Mr. Arnaiz' debriefings. It is important to remand the Court that Mr. Arnaiz, in order to help the government in its investigation "entered into a plea based on amounts provided by the Government without the benefit of having received any discovery. In fact, the Defendant relied on the information provided by the Government in entering its plea on the **assumption** that a proper financial analysis of the different companies had been conducted". (Renewed motion for continuance of sentencing hearing).

It is also important to remind the Court that unlike other types of transaction, all of the proceeds were deposited directly into identified bank accounts from which numerous checks were written; these transactions are easily traced.

Furthermore, because Mr. Oliva pled Mr. Arnaiz prior to indictment and without discovery, Mr. Oliva did not have the evidence to present to this Court to ease the Court's concern, therefore, Mr. Oliva requested from the Government their financial information to present to the Court. Mr. Oliva was ignored by the AUSA for months and close to Mr. Arnaiz' sentencing Mr. Oliva was handed a box full of checks without summaries, indexes, financial analysis, check registers or any semblance of order to thousands of checks. There was also 1099's from the various clinics and other reports that did not match each other or the PSI figures. Mr. Oliva's reaction was one of surprise and frustration as seen in his motions to the Court asking for extensions. Mr. Oliva did not expect this reaction from the Government due to the fact that he had taken the Government's work at face value and had pleaded his client prior to indictment and

obtained from Mr. and Mrs. Arnaiz to wrongfully charge him with money laundering. Mr. Arnaiz was charged for a conduct he did not commit. (Mrs. Arnaiz took this action upon herself, to give Macia the clinic's funds) and this information is Kastigar material. Count 12 is also Kastigar material as evidenced by Mr. Whitting's letter to the parole commission where he requests for Mr. Arnaiz to work as a CI. (See Kastigar motion) Mr. Arnaiz gave the information to S/A Whitting and this immunized testimony became the basis for Count 12.

We pray that this Honorable Court takes into account and notes of this Sentencing Memorandum and all the additional motions that have been filed by the Defense.

Respectfully Submitted,

Ismael Felipe Arnaiz, Pro Se